UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANNE MARIE DAVIS,
        Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,
        Defendant.



**DECISION & ORDER**
16-cv-954-JWF

## Introduction

On November 29, 2016, Anne Marie Davis ("Davis" or "plaintiff") brought this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied Davis's application for disability insurance benefits under Title II of the Act. Docket # 1.

Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 11, 16. For the reasons that follow, Davis's motion for judgment on the pleadings (Docket # 11) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 16) is **denied**, and this matter is remanded to the Commissioner for calculation of benefits.

## Background and Procedural History

On November 12, 2012, Davis applied for benefits with the Social Security Administration ("SSA"), alleging disability since July 22, 2012, due to several physical and psychological disorders,

1

including fibromyalgia, degenerative disc disease, panic disorder, anxiety disorder, adjustment disorder, and collagenous colitis. Administrative Record (Docket # 6) ("AR") at 88, 156-57. Davis and a vocational expert ("VE") testified before Administrative Law Judge Timothy M. McGuan ("the ALJ") at a hearing two years later. AR 116-55. On February 23, 2015, the ALJ found that Davis was not disabled within the meaning of the Act. AR 83. On October 13, 2016, the Appeals Council denied Davis's request for review. AR 1-5. Thereafter, Davis commenced this action seeking review of the Commissioner's final decision. Docket # 1.

## Discussion

According to the ALJ, plaintiff has the following severe impairments: (1) fibromyalgia; (2) degenerative disc disease; (3) bulging disk at C3-4 exerting mass effect on the ventral spinal cord and exiting nerve roots; (4) herniation at C5-6 exerting mass effect on the ventral spinal cord and exiting nerve roots; (5) panic disorder without agoraphobia; (6) anxiety disorder; (7) adjustment disorder; and (8) collagenous colitis. AR at 84. In his decision the ALJ found that administrative record "<u>establishes a history of fibromyalgia, chronic fatigue syndrome, and related degenerative disc disease of the spine</u>." AR at 88 (emphasis added). The ALJ further found that "the record documents <u>a history of 'stress issues.'</u>" AR at 90 (emphasis added). The ALJ stated that treating sources diagnosed plaintiff with "adjustment

2

disorder with mixed anxiety and depressed mood." AR at 90. As noted by the ALJ, the plaintiff testified under oath at her hearing that her daily activities vary depending on her pain level. Plaintiff testified that she had "difficulty dressing, bathing and caring for her hair due to pain and weakness, although she can feed herself simple meals." AR at 87. The ALJ stated that plaintiff "described sickness caused by pain" and "an inability to get up every day due to the impact of her fibromyalgia and chronic fatigue."[1] AR at 88. The ALJ noted that plaintiff testified that her "body aches and pain are on average 6/10 in severity" and "changes in schedule exacerbate pain and fatigue." AR at 88. The ALJ also stated that plaintiff testified that "she has had 20 colitis episodes requiring ER treatment and a hospital admission for three days." AR at 88. Plaintiff told the ALJ that during flareups of her colitis she uses the bathroom in excess of twenty times per day.[2] AR at 133.

---

[1] Plaintiff testified that, because of her fibromyalgia, she is "sick three to four days a week, ill where I'm so weak and the pain is so bad that, honestly, I don't even shower every day." AR at 121. She further explained, "[i]t's all-over body pain. If you can imagine having the flu, aches and pains from that – mainly it's the soft tissues, then the joints, the muscles, and the tendons." AR at 129. For example, she said, "showers is [sic] a big deal some days. Like I said, some days I just don't, which is disgusting, but I can't, you know." AR at 129. Normal daily activities exacerbate her fibromyalgia. For example, she is not able to clean, do dishes, or pick up her 20-pound grandson by herself. AR at 129.

[2] Plaintiff testified that her colitis is "very painful." AR at 121. During an episode of colitis, she has "no control" and food and medication go through her system quickly. AR at 133. Plaintiff explains, "[i]t just comes out. I have woken up where I've actually gone to the bathroom in my sleep." AR at 133.

3

Plaintiff's voluminous medical records from her treating doctors and medical care providers pay tribute to a woman with a variety of serious and longstanding physical and psychological problems. Her treating physician, Dr. Chandan, is Board Certified in Family Medicine. Dr. Chandan provided a letter to the ALJ that fully corroborated the sworn hearing testimony of his patient. The letter stated:

> [Anne Davis] is unable to work due to her health conditions. She suffers from fibromyalgia and chronic generalized pain in her joints and muscles. She has trouble sleeping and is often exhausted and not rested well. She suffers from mild to moderate degenerative disc disease which causes her back pain and spasms. <u>If you have any questions please feel free to contact our office</u> at [phone number].

AR at 367. (emphasis added). Plaintiff also regularly treated with Kathleen Ventry, a nurse practitioner employed by the Summit Family Health Center. In addition to providing detailed progress notes, NP Ventry provided an employment assessment for her patient. The assessment stated that she had referred plaintiff for SSI benefits because her fibromyalgia and back pain limited her mobility and increases "pain and fatigue." AR at 697. According to NP Ventry, these impairments have lasted or can be expected to last "permanent." AR at 697.

The ALJ rejected plaintiff's disability claim and determined that the opinions of Dr. Chandan and NP Ventry (which found plaintiff to be disabled) were only entitled to "limited weight."

4

AR at 92. Plaintiff claims this was clear error and I agree. The Second Circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant.").

The Second Circuit has also been clear on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own

5

expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotations and alterations omitted).

The ALJ did not provide sufficiently good reasons for discrediting Dr. Chandan's opinion. Dr. Chandan opined that Davis was "unable to work due to her health conditions" and that she "suffers from fibromyalgia and chronic, generalized pain in her joints and muscles." AR at 367. Dr. Chandan established that Davis "has trouble sleeping and is often exhausted and not rested well," and that she "suffers from mild to moderate degenerative disc disease in which it causes her back pain and spasms." AR at 367. Yet the ALJ rejected these statements, stating that "the opinion is inconsistent with the minimal findings in the record and with the extent of treatment required by [plaintiff]." AR at 92.

However, the record does not support the ALJ's rationale for discounting Dr. Chandan's opinion. Indeed, Dr. Chandan's opinion is consistent with findings upon examination and Davis's own complaints. The record, including the treatments and clinical findings, actually support the opinion of Dr. Chandan. Specifically, Davis's range of motion testing and manual muscle testing from a physical therapist (which the ALJ credited) showed minor deficits in her cervical spine, lumbar spine, right and left

6

shoulders, left elbow, right and left wrists, right and left hips, right and left knees, and right and left ankles. AR at 699-700. Moreover, the record clearly establishes clinical findings of fibromyalgia (AR at 371, 377, 402), chronic, generalized pain (AR at 410, 418), insomnia (AR at 410, 422-23, 528), degenerative disc disease, back pain, and spasms (AR at 10-11, 16, 411). Furthermore, Davis has undergone significant treatments for her ailments, including prescriptions for Lyrica and Cymbalta (AR at 372), Medrol, Albuterol, Hydrocodone-Acetaminophen (AR at 640-641), Paxil (AR at 416), Ventolin (AR at 490), Prednisone (AR at 778-79), Lortab and Xanax (AR 507), Klonopin and Valuim (AR at 788); CPAP therapy (AR at 484); colonoscopy and biopsy (AR at 500-01); and bilateral carpal tunnel release surgery (AR at 820-22, 41-44).[3]

The ALJ also gave limited weight to Dr. Chandan's opinion because it was "inconsistent with the in-depth functional capacity assessment" given by the physical therapist. AR 92. Again, this is not a sufficiently good reason to discount Dr. Chandan's opinion. "[T]he regulations are clear that a therapist's opinion is not considered 'medical evidence,' only an 'other source' upon which the Commissioner can rely." Youney v. Barnhart, 280 F. Supp. 2d 52, 59 (W.D.N.Y. 2003); see 20 C.F.R. § 416.927(a)(1); 20 C.F.R.

---

[3] Davis also received 18 trigger point injections (AR at 16); right, cervical, transforaminal epidural steroid injections (AR at 10); epidural steroid injection (AR at 8-9).

7

§ 404.1502(a). In Youney, the court found that it was improper for the ALJ to use a physical therapist's functional capacity assessment as a basis for concluding that the treating physician's opinion was inconsistent. The court determined that "[a] single statement by a therapist, therefore, is not substantial evidence against which a treating physician's opinion can be deemed inconsistent." Youney, 280 F. Supp 2d at 59 (citing Green-Younger, 335 F.3d at 107-08).

Similarly here, the ALJ relied on the physical therapist's one-time report that concluded that plaintiff could perform between light and sedentary work to establish that Dr. Chandan's treating source opinion was inconsistent with the medical evidence in the record.[4] Yet, in fact, it is the physical therapist's lone assessment that is inconsistent with the bulk of the evidence in the record, such as the findings of Dr. Chandan and NP Ventry. See AR at 665-90. This single assessment from a non-acceptable medical source cannot be used to discount the opinion of plaintiff's own treating Board-Certified physician, who had been treating plaintiff for over a year. See AR at 379.

---

[4] The ALJ may have also mischaracterized the physical therapist's report to support his RFC that would allow plaintiff to perform light work. Light work requires lifting and carrying twenty pounds occasionally and ten pounds frequently. The physical therapist observed plaintiff was able to lift a maximum of twenty pounds from floor to waist once and ten pounds waist to overhead once. AR at 700. It does not necessarily follow from a maximum one-time lift that plaintiff could lift these weights frequently or even occasionally, as required in light work.

8

Finally, the ALJ's finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (AR at 88) are not supported by substantial evidence, particularly in light of plaintiff's undisputed diagnosis and treatment for fibromyalgia. As explained by Judge Posner of the Seventh Circuit, "[fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996); see Green-Younger, 335 F.3d at 108 (holding that "a growing number of courts, including [the Second Circuit], have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease") (internal quotation marks and citations omitted). The main symptoms of fibromyalgia are:

> "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

Sarchet, 78 F.3d at 306; see also Johnston v. Barnhart, 378 F. Supp. 2d 274, 281 (W.D.N.Y. 2005) ("[A] diagnosis of fibromyalgia is based primarily, if not entirely, on subjective complaints of pain.").

In July 2012, the Commissioner issued additional rules on evaluating fibromyalgia in disability claims. See SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The Commissioner's 2012 ruling provides important guidance relevant to plaintiff's claims. The ruling states that "[b]ecause the symptoms and signs of FM [fibromyalgia] may vary in severity over time and may even be absent on some days," it is important in making an RFC for a person with fibromyalgia that the ALJ "consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" Id. at *5-6. Moreover, in order to obtain "longitudinal evidence," information from nonmedical sources can help "evaluate the severity and functional effects of FM." Id. at *4-5. The ruling further provides that "[w]idespread pain and other symptoms associated with FM, such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work" and "[p]eople with FM may also have nonexertional physical or mental limitations because of their pain or other symptoms. Some may have environmental restrictions, which are also nonexertional." Id. at *6.

> Muscle weakness and diminished motor function are not the only symptoms associated with fibromyalgia. "Fibromyalgia is a common syndrome in which people experience long-term, body-wide pain and tender points in joints, muscles, tendons, and other soft tissues. Fibromyalgia has also been linked to fatigue, sleep problems, headaches, depression, anxiety, and other

symptoms."

Tyndall v. Astrue, No. 3:10-cv-234-J-32TEM, 2011 WL 4029398, at *11 (M.D. Fla. Aug. 11, 2011) (quoting Pubmed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001463/ (Mar. 24, 2011)). The record here is replete with detailed treatment records that provide very clear longitudinal documentation of pain and other symptoms fully consistent with fibromyalgia. See, e.g., AR at 371, 377, 402.

The ALJ discounted the opinions of plaintiff's treating doctor because his opinion was "inconsistent with minimal findings in the record and with the extent of treatment required by the claimant." AR at 92. This reasoning was also faulty. The Second Circuit has recognized that fibromyalgia is a disease that "eludes [objective] measurement." Green-Younger, 335 F.3d at 105-08 (because fibromyalgia is "a disease that eludes [objective] measurement," the ALJ improperly discredited treating physician's disability determination based upon lack of objective evidence). "The lack of objective clinical findings is, at least in the case of fibromyalgia, therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations." Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 64 (11th Cir. 2010). Fibromyalgia is typically marked by chronic and severe pain. Plaintiff's hearing testimony pays tribute to debilitating pain and other symptoms (fatigue,

disturbed sleep, anxiety, headaches, stiffness) that are consistent with fibromyalgia. AR at 121, 126, 129. "Subjective pain may serve as the basis for establishing disability, even if . . . unaccompanied by positive clinical findings of other 'objective' medical evidence." Donato v. Sec'y of Dep't of Health & Human Servs., 721 F.2d 414, 419 (2d Cir. 1983) (emphasis added) (citation omitted). Moreover, there is no evidence in the record that plaintiff's doctors doubted the severity of plaintiff's pain or its cause. The record confirms that various measures were tried to address plaintiff's pain. Plaintiff was prescribed several medications to alleviate her pain and other symptoms. The dosage and frequency of these medications clearly support plaintiff's claims of persistent and significant pain. "[T]he logical and reasonable inference [is] that a person prescribed such a variety of pain medications in fact experienced severe pain." See Mushtare v. Astrue, No. 7:06-CV-1055 (LEK/VEB), 2009 WL 8633200, at *6 (N.D.N.Y. July 27, 2009).

In sum, fibromyalgia is often not going to leave a trail of objective findings and obvious treatment modalities. Accordingly, "[w]hen fibromyalgia is alleged, the credibility of a claimant's testimony regarding her symptoms must take on substantially increased significance in the ALJ's evaluation of the evidence." Soto v. Barnhart, 242 F. Supp. 2d 251, 256 (W.D.N.Y. 2003). The ALJ's reasoning for not affording controlling weight to the

opinions of plaintiff's treating physician while diminishing the credibility of plaintiff's complaints of pain was not supported by substantial evidence.

## Conclusion

The ALJ erred in not giving controlling weight to plaintiff's treating physician and giving limited weight to plaintiff's treating nurse practitioner. Plaintiff suffers from a myriad of serious and documented physical and mental impairments which are corroborated in and supported by her extensive medical record as well as her own sworn testimony. A fair reading of the administrative record supports her treating doctor's opinion that she is unable to engage in fulltime employment in a competitive work environment. When "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose" it is appropriate to reverse the determination of the ALJ and remand to the Commissioner for the calculation and payment of benefits. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980); see Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (remand for calculation of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision").

Accordingly, for the reasons stated above, it is hereby **ORDERED** that plaintiff's motion for judgment on the pleadings (Docket # 11) is **granted** and the Commissioner's motion for judgment

on the pleadings (Docket # 16) is **denied**. This case is remanded for calculation and payment of benefits.

                                                                _____
                                                                 JONATHAN W. FELDMAN
                                                              United States Magistrate Judge

Dated:     September 21, 2018
              Rochester, New York